Filed 3/26/25  In re P.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re P.B. et. al., Persons Coming Under the Juvenile Court Law. | |
| | D084628 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J521302ABC) |
| v. | |
| K.T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

In this appeal, Kim T., the maternal grandmother, contends that the trial court abused its discretion under Welfare and Institutions Code,[1] section 388 by declining to move three children from the home of a paternal cousin to her out-of-state home. While recognizing that both were good placement options, the court ultimately determined that it was in the children's best interests to remain in the current placement with the paternal cousin to achieve stability and because the services in place had proven successful. Despite the maternal grandmother's longer relationship with the children, we cannot say the court's determination was an abuse of discretion. Accordingly, we affirm the court's order denying the maternal grandmother's petition requesting the change in placement.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Initial Proceedings and Placement*

M.T. (Mother) and M.B. (Father) had three children, P.B., S.B., and L.B. The San Diego County Health and Human Services Agency (Agency) detained the children, then ages 10, seven, and two, respectively, in September 2023 and filed dependency petitions on their behalf. The family had previously lived in Washington and Oregon, where they experienced involvement by welfare agencies.

To support the petition and continued detention, the Agency alleged the children were living in unsanitary conditions, exposed to and tested positive for drugs, routinely left home alone, and malnourished. The court held a detention hearing and found that the Agency had stated a prima facie case for initial removal and continued detention of the children.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

The parents did not maintain consistent communication with the Agency or regular visitation with the children, and they did not begin services pursuant to the case plan. We do not further detail the circumstances of removal or the parents' involvement in the case, as they are not at issue. Rather, the appeal involves the placement of the children with paternal cousin Heidi R. and her husband David R. instead of with the maternal grandmother.

From the beginning of the case, the maternal grandmother expressed interest in having her North Carolina home evaluated for placement. She promptly initiated the process for approval of her home under the Interstate Compact for the Placement of Children (ICPC). At the detention hearing, the court gave the Agency discretion to place the children out of state upon ICPC approval.

The maternal grandmother has had a relationship with the children since their respective births. She assisted with the children's care when they were born and lived with the family and took care of the children at times, including assisting with the children's care during the Washington Child Protective Services case. The maternal grandmother informed the Agency that the parents had been using drugs over a 12-year period and she often had to "save" the children.

During the case, the maternal grandmother visited San Diego multiple times, including immediately after detention when she stayed with the children for a week in a hotel, and she had regular telephone and video visits with the children throughout the case. The children also visited the maternal grandmother in North Carolina on multiple occasions. The maternal grandmother took part in Child Family Team meetings, school conferences, and Individual Education Plan meetings. The two older children required

speech therapy, and the youngest child required speech, occupational, and behavioral therapy. In late 2023, the maternal grandmother received temporary educational rights for the children at the recommendation of the Agency.

The children were placed in a foster home in November 2023. As of December 2023, the Agency planned to place the children with the maternal grandmother upon ICPC approval. The Agency received notice on December 13, 2023, that the ICPC report had been completed and approved by the supervisor, but the Agency had not yet received the final approval.

On December 18, 2023, the court held a contested jurisdiction and disposition hearing. The court made a true finding on an amended petition, found clear and convincing evidence for continued removal of the children from the parents' custody, declared the children dependents of the court, maintained the children's placement in the licensed foster home, and ordered reunification services and supervised visitation for the parents.

The court held a special hearing on January 18, 2024, to consider whether to maintain the children's San Diego placement or place them with the maternal grandmother in North Carolina. The Agency recommended placement with the maternal grandmother in North Carolina rather than remaining in San Diego based on the section 361.3 factors, noting the strong connection between her and the children, her preexisting relationship prior to the dependency case, and her involvement in the case. The children's guardian ad litem agreed, adding that the children wished to live with the maternal grandmother. The parents opposed placement of the children with the maternal grandmother outside of San Diego, contending it would undermine reunification efforts.

4

Considering the section 361.3 factors, the court held that the best interest of the children was to remain in the foster home in San Diego with physical and virtual visitation with the maternal grandmother. The court reasoned that the parents had visited the children twice since the previous hearing, and the maternal grandmother's ICPC remained pending. In the court's view, the distance would pose a barrier to a meaningful reunification effort. However, the court noted that it would reassess this issue upon a change in circumstances, such as the parents failing to consistently visit.

Shortly after that hearing, on January 30, 2024, the maternal grandmother received formal ICPC approval.

B. *Placement with Heidi and David R.*

On February 16, 2024, paternal cousin Heidi R. reached out to the Agency regarding potential foster care of the children. She had not seen Father since he was a child, but she was interested in starting the process to take placement of the children. She had two adult children and two children at home, ages eight and 10. Heidi R. visited with the children on March 7, 2024.

The maternal grandmother filed a section 388 petition on March 12, 2024, based on the changed circumstance of her ICPC approval.

The Agency moved the children's placement to the home of Heidi and David R. on March 22, 2024, after the home had been assessed and approved by the Agency.

In its April 10, 2024, report leading up to the maternal grandmother's initial section 388 petition hearing, the Agency acknowledged that the children had a close relationship with the maternal grandmother and that she loved and supported the children throughout case. Nonetheless, the

Agency recommended the children remain in San Diego because they had bonded with their cousins and moving them again would cause distress.

On April 10, 2024, the court held the initial hearing and concluded that maternal grandmother made a prima facie showing of changed circumstances based upon the approval of the ICPC. The court set a contested hearing to coincide with the six-month hearing on June 17, 2024.

By June, the children were thriving in the home of Heidi R. Based on the children's wishes and the ability to continue services they had already begun, the children's Court Appointed Special Advocate (CASA) therefore recommended the children remain in their current placement. S.B. and P.B. expressed to the CASA a preference for remaining in the current placement and attending the same school, while being able to visit the maternal grandmother. The provider reported that the children were comfortable, happy, and functioning well in Heidi and David R.'s home. The provider explained that the caregivers met the needs of the children, including setting up therapeutic services. P.B. and S.B. began receiving Comprehensive Assessment and Stabilization Services (CASS) in addition to speech, and L.B. had seen an ophthalmologist and had a speech and occupational therapy evaluation.

P.B. and S.B.'s CASS therapist reported that Heidi and David R.'s home was "a strong and safe environment" where the children "have great support from family and the caregivers." She also wrote that the children were "calm and comfortable" and "functioning well" with the caregivers. They had additionally "improved their overall social and emotional functioning" through the CASS services."

S.B. consistently expressed a preference to remain with Heidi and David R. She refused to go on a visit to the maternal grandmother's home in

July 2024. P.B. generally expressed a preference to live with the maternal grandmother. Even so, P.B. enjoyed playing with his cousins and felt that living at Heidi R.'s was fun.

At the June 17, 2024 hearing, the Agency requested a continuance to further consider whether placement with the maternal grandmother would be in the children's best interests. The court granted the continuance, agreeing that additional information would be required to determine the best placement option.

C. *The Section 388 Hearing*

At the July 17, 2024, pretrial status conference, the Agency recommended placement of the children with Heidi and Dave R. because the children were thriving, the children appeared bonded to the family, the caregivers demonstrated the ability to meet the children's needs and protect the children, and the caregivers were willing to provide permanency for all three children if reunification failed.

The court held the contested hearing on the maternal grandmother's section 388 petition on July 31, 2024.

The Agency acknowledged that there had been a change in circumstances due to the maternal grandmother's ICPC approval, and explained that it changed its position to recommend placement with Heidi R.: (1) because of "her demonstration of her care, structure, and ability to put the children in resources and services to help their development," which resulted in them "doing very, very well," and (2) to provide the children stability. The children made significant developmental improvements since their placement with Heidi R.

As to the maternal grandmother, the Agency was concerned the children's services would be disrupted if moved to North Carolina, noting that

the maternal grandmother had a history of moving frequently. The Agency emphasized the importance of "continuity and consistency" of successful services, which might not be replicated with new service providers.

According to the Agency, Heidi R. focused on stability and continuity for the children, including the support services set up for each of the children. The Agency's counsel also noted that the children were thriving despite it being a traumatic time in their lives.

The children's guardian ad litem favored placement with the maternal grandmother. He noted S.B.'s preference to remain living with Heidi R., but that P.B. would prefer to live with his maternal grandmother. The maternal grandmother, he continued, had the advantage in terms of "the nature and duration of the relationship" and was "unwavering in her pursuit of the children since the case came forward."

The maternal grandmother argued placement with her was in the best interest of the children because of the nature and duration of her relationship with them. She had been involved with the children for their entire lives and had dropped everything to help with them when necessary, including flying to San Diego to stay with them for a week at the beginning of this case. To the contrary, Heidi R. had only been involved with the children for four months and lacked the "familial ties" of the maternal grandmother.

The court found that there was a change in circumstances based on the maternal grandmother's approval for placement but that the children's best interest was to remain with Heidi R. In making that finding, the court considered the section 361.3 factors as relevant in the section 388 analysis. The court noted that both potential caregivers had good moral character, a stable environment, the ability to effectively parent, the ability to protect from the parents, and safe homes. The court explained that the maternal

8

grandmother did "everything she is supposed to do," but that the case was about what was best for the children.

With that focus, the court concluded that, given the chaotic, unstable nature of their lives prior to placement with Heidi R., the best interests of the children were to maintain their current placement because it was a stable, loving environment, where the caregivers were meeting the children's "many special needs."

## II.

## DISCUSSION

The maternal grandmother contends the trial court abused its discretion in the children's placement because: (1) the children had a long-standing relationship with the maternal grandmother consistent with statutory intent to maintain familial bonds (see § 202, subd. (a)), (2) services required for the children were available in North Carolina, (3) the maternal grandmother was entitled to relative preference, (4) the maternal grandmother would be able to meet the children's needs, and (5) the children's guardian ad litem supported placement with the maternal grandmother. The Agency does not dispute the maternal grandmother's unwavering love and support of the children or her ability to meet their needs in a safe, stable, and protective home. However, the Agency argues it was not an abuse of discretion for the trial court to maintain the current placement given the children's development and behavioral improvements there and to preserve stability. We agree with the Agency that, while the maternal grandmother also may have been a good placement option, maintaining another successful placement was not an abuse of discretion, and we cannot substitute our own decision for that of the trial court.

9

Section 388, subdivision (a)(1) provides that any person with interest in a child may petition the court to change, modify, or set aside an order based on changed circumstances or new evidence. Under section 388, the petitioning party bears the burden of showing by a preponderance of the evidence that: (1) there has been a change of circumstance or new evidence since the challenged court ruling, and (2) the proposed modification is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); see § 388, subds. (a)(1) & (d).)

We review the juvenile court's ruling for abuse of discretion. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.] But ' " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*In re Caden C.* (2021) 11 Cal.5th 614, 641.) Rather, " '[t]he reviewing court should interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order.' [Citations.]" [Citation.]' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.)

At least through the reunification period, section 361.3, subdivision (a) provides for "preferential consideration . . . to a request by a relative of the child for placement of the child," including at a section 388 hearing. (§ 361.3, subd. (a); *In re Isabella G.* (2016) 246 Cal.App.4th 708, 720–721.) Under this statute, " 'Relative' means an adult who is related to the child by blood,

adoption, or affinity within the fifth degree of kinship."[2] (§ 361.3, subd. (c)(2).) In considering relative placement, the court is required to examine certain factors:

> "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.
>
> "(2) The wishes of the parent, the relative, and child, if appropriate.
>
> "(3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement.
>
> "(4) Placement of siblings and half siblings in the same home . . . .
>
> "(5) The good moral character of the relative and any other adult living in the home . . . .
>
> "(6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful.
>
> "(7) The ability of the relative to do the following:
> > (A) Provide a safe, secure, and stable environment for the child.
> > (B) Exercise proper and effective care and control of the child.
> > (C) Provide a home and the necessities of life for the child.
> > (D) Protect the child from their parents.
> > (E) Facilitate court-ordered reunification efforts with the parents.

---

[2] The record refers to Heidi R. as a "paternal cousin." Her relationship to the children is not clear, nor is it clear that she was entitled to the section 361.3 relative preference.

11

(F) Facilitate visitation with the child's other relatives.

(G) Facilitate implementation of all elements of the case plan.

(H)

(i) Provide legal permanence for the child if reunification fails.

(ii) However, any finding made with respect to the factor considered pursuant to this subparagraph and pursuant to subparagraph (G) shall not be the sole basis for precluding preferential placement with a relative.

(I) Arrange for appropriate and safe childcare, as necessary.

"(8)

(A) The safety of the relative's home. . ." (§ 361.3, subd. (a).)

Here, the court acted within its discretion by placing the children with Heidi and David R. after considering the section 361.3 factors. The children were thriving in the placement and having their needs met. They were each receiving services that had successfully improved their development and behavior. The Agency, the CASA, and the children's daycare and respite provider all recommended maintaining the existing placement. P.B. and S.B.'s CASS therapist reported that the children were functioning well in the placement and had made improvements through the CASS services. The court reasonably determined that stability and continuity for the children, something they had lacked their entire lives, in a successful placement was in the best interests of the children. (See *Stephanie M., supra,* 7 Cal.4th at p. 317 ["In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity."].)

Even though the maternal grandmother had a longer relationship with the children, good moral character, the potential to provide a stable

environment, the ability to effectively parent, the ability to protect from the parents, a safe home, and the desire to permanently take in all three children, the trial court came to the reasonable conclusion that placement with her was not in the children's best interests under the circumstances. Continued placement with Heidi R. provided stability and certainty in the children's home and services, in addition to caregivers with good moral character, the ability to effectively parent, the ability to protect from the parents, the desire to provide permanence for all three children, and a safe home. Further, both P.B. and S.B. reported that they enjoyed playing with their cousins and "love" the placement. S.B. had a negative view about moving to live with the maternal grandmother.

Even if the court could have reasonably concluded placement with the maternal grandmother was in the best interests of the children because of their longer relationship with her, we may not substitute that choice for the trial court's sound decision. This principle is true even if, as the Agency acknowledges in its brief, the maternal grandmother, like Heidi R., would be able to meet the children's needs and be protective of the children. When "faced with two good options" for placement, "the court was fully aware of the difficulty of the choice and with the parties before it, was best able to make the hard call of which placement, under the circumstances as they then existed, was in the minor's best interest." (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.) As in *In re M.H.*, because the children were "thriving in [their] current placement" and there would be uncertainty in the new placement, continuing the existing "placement was in [their] best interest." (*Id.* at pp. 1305–1306.)

The maternal grandmother's citation to *In re Robert L.* (1993) 21 Cal.App.4th 1057 (*Robert L.*), fails to persuade us otherwise. There, the trial court denied the minors' continued placement with their grandparents despite section 361.3 out of concern they would hinder reunification efforts. (*Robert L.*, at pp. 1063, 1068.) The appellate court reversed, concluding that concern was "wholly speculative." (*Id.* at pp. 1067–1068.) *Robert L.* does not stand for the proposition that minors must always be placed with grandparents who had a long-standing relationship. In *Robert L.*, the Court of Appeal reversed the trial court's order that the children be moved from their existing relative placement. Here, granting the maternal grandmother placement would have required moving the children out of their successful placement, which the trial court found determinative under the circumstances.

The maternal grandmother contends that the Agency's concerns about her, such as her ability to set up services for the children, were "wholly speculative" like the concerns in *Robert L.* The trial court, however, apparently did not share those concerns and did not base its decision on them. The court did not fault the maternal grandmother in any way, but rather stated, "Grandmother has done everything she is supposed to do. . ." But because the children were "in a completely loving environment that's stable" and "have many, many special needs that are being fulfilled," the court determined the best interests of the children were to remain in that placement. We cannot say that decision was an abuse of discretion.

14

## III.

## DISPOSITION

The juvenile court's order denying the section 388 petition to change placement is affirmed.

KELETY, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.